UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DZENETA KARIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 1309 ACL |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff Dzeneta Karic brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Karic's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Karic filed her application for benefits on May 4, 2015, claiming that she became unable to work on April 24, 2015. (Tr. 160-61.) In her Disability Report, Karic alleged disability due to post-traumatic stress disorder ("PTSD"). (Tr. 181.) Karic was 35 years of age on her alleged onset of disability date. (Tr. 50.) Her application was denied initially. (Tr. 92-97.) Karic's claim was denied by an ALJ on September 28, 2017. (Tr. 41-52.) On June 13, 2018, the Appeals Council denied Karic's claim for review. (Tr. 1-7.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Karic argues that "the ALJ improperly weighed the opinion of Plaintiff's treating psychiatrist, Dr. Ardekani." (Doc. 17 at p. 5.) Karic also contends that the ALJ "improperly weighed the opinion of the state agency psychological consultant." *Id.* at p. 8.

## II. The ALJ's Determination

The ALJ first found that Karic meets the insured status requirements of the Act through September 30, 2020. (Tr. 43.) She next found that Karic did not engage in substantial gainful activity since April 24, 2015, her alleged onset date. *Id.* In addition, the ALJ concluded that Karic had the following severe impairments: depressive disorder, anxiety disorder with panic attacks, attention deficit hyperactivity disorder ("ADHD"), and PTSD. *Id.* The ALJ found that Karic did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 44.)

As to Karic's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to noncomplex

> tasks consistent with a specific vocational preparation (SVP) of 1
> or 2 (i.e., unskilled work).

(Tr. 45.)

The ALJ found that Karic was able to perform her past relevant work as a custodian/janitor. (Tr. 50.) In the alternative, the ALJ found that Karic could perform other jobs existing in significant numbers in the national economy. (Tr. 51.) The ALJ therefore concluded that Karic was not under a disability, as defined in the Social Security Act, from April 24, 2015, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on May 4, 2015, the claimant
> is not disabled under sections 216(i) and 223(d) of the Social
> Security Act.

(Tr. 52.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

In both of her claims, Karic challenges the ALJ's evaluation of the medical opinion evidence.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Karic first argues that the ALJ erred in weighing the opinion of treating psychiatrist Dr. Ardekani. Dr. Ardekani authored a Mental Residual Functional Capacity Questionnaire ("Questionnaire") on March 27, 2017. (Tr. 288-91.) He indicated that he had been seeing Karic every eight weeks for diagnoses of bipolar disorder and ADHD, and was treating these impairments with medication. (Tr. 288.) Dr. Ardekani stated that Karic experienced side effects of fatigue and lethargy due to her medications. *Id.* Dr. Ardekani expressed the opinion that Karic was "unable to meet competitive standards" in her abilities to maintain attention for two-hour segments and sustain an ordinary routine without special supervision; and was "seriously limited but not precluded" in her abilities to remember work-like procedures, maintain

regular attendance and be punctual within customary tolerances, make simple work-related decisions, complete a normal work day and work week without interruptions from psychologically-based symptoms, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with normal work stress. (Tr. 290.) As an explanation for these findings, Dr. Ardekani noted "severe depression," "severe anxiety," and lack of concentration due to ADHD. *Id.* He indicated that Karic would miss four or more days of work per month. (Tr. 291.) When prompted in a subsequent questionnaire to identify the objective findings upon which his conclusions were based, Dr. Ardekani cited Karic's panic attacks and agoraphobia. (Tr. 296.)

The ALJ indicated she was assigning "little to no weight" to the opinions Dr. Ardekani expressed in his Questionnaire. (Tr. 48.) The ALJ explained that Dr. Ardekani's opinions were inconsistent with his own treatment notes and Karic's daily activities. (Tr. 47-48.) The ALJ discussed Dr. Ardekani's records, and concluded that his treatment notes reveal Karic's impairments were well-controlled with medication. (Tr. 46-48.) She indicated that she was assigning "great weight" to Dr. Ardekani's treatment records, but little to no weight to the opinions expressed in the Questionnaire.

Karic received all of her psychiatric treatment from Dr. Ardekani at Ardekani's Stress Clinic from April 2014, through the ALJ's decision. At Karic's initial visit on June 11, 2014, she reported her mood was irritable, her anxiety was high, she was experiencing panic attacks, her sleep was poor, and her appetite was fair. (Tr. 262.) On examination, Dr. Ardekani found Karic's demeanor was anxious, she exhibited good eye contact, increased psychomotor activity, normal speech, cohesive thoughts, a constricted affect, fair insight and judgment, and obtunded

consciousness. *Id.* Dr. Ardekani diagnosed Karic with depression and panic attacks and prescribed psychotropic medications. (Tr. 263.) On August 7, 2014, Karic described her mood as fair, her anxiety as "low," and her sleep, appetite, and energy as "good." (Tr. 264.) She was still having panic attacks. *Id.* Upon examination, Dr. Ardekani noted Karic was calm, she exhibited good eye contact, her speech was normal, her thoughts were cohesive, her affect was euthymic and flat, and her insight and judgment were good. *Id.* Karic was tolerating her medications well. (Tr. 265.) In November 2014, Karic no longer reported panic attacks and described her sleep and appetite as fair. (Tr. 266.) Dr. Ardekani's findings on examination remained unchanged. *Id.* Karic reported her sleep, appetite, and energy were good in January 2015. (Tr. 270.) In August 2015, Karic reported her mood was low and her anxiety was "medium," although she continued to deny experiencing panic attacks. (Tr. 272.) Dr. Ardekani found Karic was cooperative, anxious, exhibited fair eye contact, increased psychomotor activity, tremor, and decreased speech. (Tr. 272.) In October 2015, Dr. Ardekani indicated Karic was anxious, cooperative, exhibited good eye contact, increased psychomotor activity, normal speech, labile affect, and good judgment. (Tr. 275.) Dr. Ardekani diagnosed Karic with bipolar disorder and panic disorder without agoraphobia, and adjusted her mediations. *Id.* Dr. Ardekani's findings and diagnoses were unchanged on January 11, 2016. (Tr. 277.) He continued her medications. *Id.* In April 2016, July 2016, and February 2017, Dr. Karic noted "the same no changes continue meds." (Tr. 278-82.)

The ALJ's finding that Dr. Ardekani's opinions were inconsistent with his own treatment notes was not erroneous. First, Dr. Ardekani's statement in his Questionnaire that Karic experienced side effects of fatigue and lethargy from her medications is inconsistent with his treatment notes. Dr. Ardekani consistently indicated that Karic was "tolerating medications

well," and did not document side effects. (Tr. 263, 265, 267, 269, 271, 273.) Second, Dr. Ardekani's treatment notes reveal that Karic's symptoms improved with medications. As the ALJ noted, Dr. Ardekani did not document significant abnormalities or deficits with respect to Karic's mood, affect, thought processes, concentration, social interaction, activities of daily living, judgment, insight, or behavior. (Tr. 48.) Significantly, by her third visit in November 2014, Karic was no longer experiencing panic attacks. (Tr. 266.) Third, although Dr. Ardekani stated in his supplemental questionnaire that his conclusions were based on objective findings of "panic attacks" and "agoraphobia" (Tr. 296), his treatment notes reveal that Karic's panic attacks completely resolved by November 2014 and contain no diagnosis of agoraphobia. Instead, Dr. Ardekani consistently diagnosed Karic with "panic disorder *without* agoraphobia." (Tr. 275, 277, 279, 281, 283) (emphasis added).

The ALJ indicated that she was according "substantial evidentiary weight" to the opinion of state agency psychologist J. Edd Bucklew, Ph.D. (Tr. 46.) On July 28, 2015, Dr. Bucklew expressed the opinion that Karic had mild restriction of her activities of daily living, and mild difficulties in her abilities to maintain social functioning and concentration, persistence, or pace. (Tr. 88.) Dr. Bucklew found that Karic's condition did not result in significant limitations in her ability to perform basic work activities and was therefore not severe. (Tr. 90.) Dr. Bucklew indicated that his opinion was based on his review of Dr. Ardekani's records noting Karic was doing well, the fact that Karic has had no psychiatric hospitalizations, and Karic's ability to engage in significant daily activities. (Tr. 88.)

The ALJ acknowledged that Dr. Bucklew was not a treating physician but stated that he was a qualified expert in evaluating psychological issues in Social Security cases, and his opinions were consistent with the record as a whole. (Tr. 47.) The ALJ did not err in assigning

weight to Dr. Bucklew's opinion.  *See* 20 C.F.R. § 416.913a(b)(1); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating Mabry's RFC."); *Stormo v. Barnhart*, 377 F.3d 801, 807–08 (8th Cir. 2004) (the ALJ properly used evidence from state agency doctors in supporting the finding that the claimant's mental impairments were not disabling); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) ("Contrary to Kamann's assertion that the record contained insufficient evidence to support a RFC determination, we find the ALJ thoroughly reviewed years of medical evidence on record and issued a finding consistent with the views of Dr. Pressner, the reviewing agency psychologist.").

The ALJ concluded that Karic had the RFC to perform noncomplex tasks consistent with an SVP of 1 or 2 (i.e., unskilled work).  (Tr. 45.)  RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).  Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.  *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.  *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record).  However, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

In addition to the medical evidence discussed above, the ALJ considered Karic's daily activities. Karic testified that she cares for her two children, is the sole caretaker for her four-year-old child while her husband is at work all day although she sometimes asks a neighbor for help (Tr. 65-68), prepares "complete meals with several courses" daily (Tr. 193), cleans the house, has no problems with personal care, goes out a few times a week, is able to go out alone, drives, shops, handles her finances, socializes with her family and friends every weekend, has no problem getting along with family or friends, has difficulty paying attention but is able to finish what she starts, follows instructions well, and gets along well with authority figures. (Tr. 192-98, 65-67.) Further, Karic testified that she stopped working not due to her impairments, but because she was terminated along with six other employees when management changed. (Tr. 73.)

The undersigned finds that the ALJ provided good reasons for discrediting the opinion of Dr. Ardekani and assigning significant weight to the opinion of Dr. Bucklew. The RFC determined by the ALJ is supported by substantial evidence on the record as a whole. It is supported by Dr. Ardekani's treatment notes revealing Karic's panic attacks resolved with medication, Dr. Bucklew's opinion, and Karic's testimony regarding her daily activities. This evidence supports the ALJ's determination that Karic retains the ability to perform simple work despite her mental impairments.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2019.